Your Honors, good morning. Ben Lichtman on behalf of Mr. Porter. May it please the Court, I'd like to reserve approximately five minutes of my time for rebuttal. I'm here to challenge Federal Rule of Evidence 413 as facially unconstitutional because it permits the government to convict people based on a constitutionally forbidden and an unscientific, undata-driven approach. It's a propensity argument. The history of evidentiary rules regarding a defendant's sexual propensity is not ambiguous. The government attempts to assert in its briefs that the law is vague on this point, that we – it's – I think it's purposely obtuse. But we have two Supreme Court cases and at least two published cases of this Court that tell us propensity evidence, when it is adduced as strictly propensity evidence, is, in fact, unconstitutional. Alito Can I – can I ask you this question, which I want you to continue? But is your position that we could find it unconstitutional, or do you – you know, you realize we're bound by our own precedent, the Supreme Court's precedent. So do you – are you thinking that our Court should go en banc to – to overrule our own precedent, or do you think there's room for this panel to find it unconstitutional? I think there is room for this panel. I anticipated this question, and that is because the rule that I'm challenging, Rule 413, has only been addressed in an unpublished opinion that I don't believe binds this Court in terms of Ninth Circuit precedent. Rule 414 has been addressed in published precedent, and if this Court were to – And you don't think LeMay controls this case? I don't. I will get to that in a moment. I guess I just want to answer the Court's direct question right at the head, and that is, if the Court finds that 414 is somehow applicable here, and I'm going to argue in a moment that it's not, then I understand that I'll have to do the judicial version of being a Karen, go to D.C., talk to a manager or nine of them, and have it resolved in that way. But I do think that this Court is bound by its prior decision, which is published in McKinney v. Reese. In that case, the holding was that admission of propensity evidence is of constitutional dimension, and in that case warranted the granting of habeas relief. In that case, the facts were about the defendant having a knife before, doing some acts that were consistent, arguably, with the offense for which he was charged. It was admitted as propensity evidence, and this Court granted habeas relief. Additionally, there are two Supreme Court cases that I think this Court should be bound by and is bound by. One is Spencer v. Texas. And in that case, the government, I noted in their response brief, said they cited the dissent by Judge Berger saying, hey, recidivist statutes have never been thought to — well, they said that their argument was that Judge Berger felt that the majority hadn't dealt with the propensity argument head-on. But what Judge Berger — they buried the lead here. Justice Berger, thank you. I'm proudly afraid. Yes. I think they buried the lead there because what Justice Berger said was recidivist statutes have never been thought to allow the State to show probability of guilt because of prior convictions. If we may, let's go back to LeMay because we do have that case. So what would be the difference between the federal rules of evidence that would cause us to conclude that LeMay doesn't govern here? A couple of things. One is, obviously, Mr. Porter was in charge with 414, which is what LeMay deals with. And if I were trying to make the argument that the analysis from a 414 case would apply, I would expect the logical rejoinder from the government to be, hey, that would be an advisory opinion. That's not the same rule. And it is not the same rule, and I'll explain why in a couple ways. One is 414 deals with a much narrower range of cases. But the immediate question isn't whether you could distinguish 414. And the question is whether the reasoning of delay is binding here because the reasons it relied on are applicable here. Well, I can address those.  The first is there is some data-driven basis to believe that propensity might be different in a child case. Additionally, you're talking about a class of alleged victims who don't potentially have a voice. That's a little different than 413, which has a broader base. Finally, the LeMay factors, two things here. The first is a lot of it deals with 403. But the problem with 403 is it can't really be used here. It would be like a pilot saying you can trust our airplane because we have parachutes and then burning the parachutes. Because the legislative history, there's a Seventh Circuit case that was cited by the government. And I looked through the legislative history that was in that case. And what it said was to basically gut 403, that there's a presumption that this propensity evidence is different. But then you're quarreling with LeMay because LeMay did rely on that, right? Well, I guess it did in an incorrect way. You can't rely on 403 if you gut it. But then you're quarreling with LeMay again. I mean, in other words, we're a three-judge paddle. You can file a petition for a hearing on Beck. But in terms of our decision-making, what you're saying now is saying that we should not listen to LeMay and we can't do that. Well, if the court – let's sidestep that question. If the court did listen to LeMay, I would say that the district court in this case didn't follow LeMay appropriately. Because in this case, there are a great many distinctions. And this is where we get to the gay kink-shaming part of my brief, where in LeMay or in Mr. Porter's case, what was supposedly similar was basically a strange rape situation analogized to a two-year consensual adult relationship in a totally different setting. And what the district court in this case said is, well, Mr. Porter engages in CNC. Mr. Porter engages in anal sex. Mr. Porter engages in breath plate, which are all, as I noted in my brief, a big part of LGBTQ plus culture. It's spread to mainstream culture. But then the government seized on that, and they used at least a substantial portion of their closing argument – I think it's at least two pages, it comprises maybe more – to say, this is what he does. They turned to the jury, and they just did a rank propensity argument, and it had nothing to do. So the LeMay factors, even if that were the law, and I don't think that it is, based on the fact that it's a different statute talking about different class of victims and a different type of case, even if it was, it wouldn't – it wasn't properly applied by the district court here. It wouldn't pass. I know we had that 28-J letter about whether it was de novo, abuse of discretion, and I have some disputes about that because that case did say that it's still de novo review of the Constitution, not of a statute. Let's take a sidestep that and talk about even under an abuse of discretion review, the district court abuses discretion by finding that these things are sufficiently similar when they are in fact not. When there's corroborating evidence, there's not. There's nothing that seems to meet those factors here. There's, I think, almost a half a decade difference in time. So the LeMay factors here, even if applied – So what is the standard of review on that piece of this? I understand your argument that these are two different types of incidents, but what is the standard of review in allowing the evidence in on that, over that objection? I would say it's still de novo because it's a different statute, so you can't analogize to it. But even if it was an abuse of discretion, it wouldn't satisfy the abuse of discretion standard because the facts simply don't fit the factors that are set forth in LeMay. Okay. And if the Court has any other further questions, I'd want to reserve my time for rebuttal, please. Okay. Good morning, Your Honors. May it please the Court. Nirav Desai for the United States. For over 20 years, circuit courts throughout the country have uniformly held that Federal Rule of Evidence 413 is facially constitutional. But this Court's never so held in a published opinion. That's correct, Your Honor. But alluding to the questions the Court was asking my friend on the other side, LeMay – the reasoning of LeMay controls the outcome in this case. In LeMay, this Court can – I mean, there was some discussion in LeMay of child-specific reasons. There was, Your Honor, but – Having to do with the fact that they're particularly unlikely to be believed on their own. So you need something external to be cooperative. But the – And maybe some speculation, although I haven't seen the evidence, that child sexual abusers are more likely to continue. Your Honor, a few points in response to that. First of all, it's Mr. Porter's burden to show facial unconstitutionality, just as it was LeMay's in that case. I would submit to this Court that Mr. Porter's come forward with even less data or evidence or case law than Mr. LeMay did in that case. In LeMay, there was an allusion to child molestation versus adultery. There was an allusion to child sexual assaults, but the thrust of the reasoning in LeMay was a discussion of the historical treatment of propensity evidence in the ordinary case versus sexual assault cases. The Court went through the history, found that it was ambiguous, and because Mr. LeMay had the burden in that case, it found that that history came – favored upholding the statute and thus turned to 403.  Are there, in fact, in the congressional record, for example, or anywhere, actual evidence that sexual – people convicted of sexual crimes are more likely to repeat or to have a pattern that they can't – that's determinative? Is there any such evidence? Actual data? I can't speak definitively, but I don't believe in the congressional record there was that data. There are law review articles and other types of secondary sources outside of that that do speak to recidivism. But the – And I – my understanding is they are somewhat skeptical of the notion that there's actually a difference. So the government would – would recognize that at the time Rules 413 through Rule 415 were passed, that they were – they were hotly contested. And ultimately, what the courts have decided is that that's the province of Congress to draft these rules as opposed to the Supreme Court or another court drafting rules of evidence. And to that point, in LeMay, LeMay crafted the safeguard of applying 403 in a full-throated manner to decisions about whether to admit evidence in – in the context of Rule 414. And I would note, just as an aside, this Court in United States v. Sioux, footnote 4, has recognized that due to the striking similarities between the rules in 413 through 415, that they are – and that they are in pari materia, that they've – this Court has followed decisions interpreting these rules individually in cases interpreting their companion statutes. And in that respect, to the Court's earlier questions, to my friend on the other side, LeMay's discussion of Rule of Evidence 414 is – animates this Court's consideration of Rule 413 in – in this case. But these kind of challenges depend on a record? In other words, if somebody were to argue that this rule of evidence is unconstitutional, are they – is it different if they come forward with studies, experts, whatever they would come forward with to say this actually is an irrational rule? We don't actually have that here. We don't, Your Honor. There is absolutely no evidence supplied by Mr. Porter in this case supporting why Rule 413 is facially invalid. And – What was it – do you know, in LeMay, was there such evidence put forward? There was historical evidence. Because the question went to whether the rule violated fundamental conceptions of fairness, what was submitted in LeMay, from what I can glean from the opinion, was a historical record about the admission of propensity evidence, when that is allowed, when that has historically been allowed, and when it has not been allowed. And on the historical record, this Court recognized in LeMay that the record was mixed. There are the cases that Mr. Porter relies on today, Dowling and Spencer and McKinney, that the LeMay court considered, but also had historical records reflecting that propensity evidence had been allowed in both sexual assault cases as well as under lustful disposition laws going back to the 1800s. And so that was the nature of the evidence that was supported. What about the McKinney case? Is that informative here? Only in a limited way, Judge Berzon. So McKinney does recognize in a sentence the constitutional magnitude of propensity evidence. But McKinney came out, what was issued before Rules 413 through 415, and also LeMay addressed McKinney in this sense. McKinney said that sometimes propensity evidence will be fundamentally unfair where it is of little relevance and the prejudicial value exceeds that probative value in an unfair manner. LeMay confronted McKinney directly and made that exact point in rejecting the appellant's argument based on McKinney in that case. Can you address the application of this in this case? Because the Mr. Porter argues that the two sets of events here are actually quite different. And why don't you go ahead and give your response? Yes, Your Honor. So first I would note that Mr. Porter hasn't directly challenged the actual 403 balance that was conducted in this case. He's raised two constitutional challenges, and his as-applied challenge goes to whether there needs to be independent corroboration during the process of evaluating whether Rule 413 evidence should come in. So the government would submit that Mr. Porter has not even attacked the 403 balance and has waived that argument. But going to the similarities, in the district court, Mr. Porter's contention was that the acts here were too dissimilar and that A.H. and Porter had — were in a consensual relationship as opposed to a sort of stranger assault situation. Those are the two arguments that he raised in the district court. But — and the government in the district court acknowledged that there was a difference in the nature of the relationship, that there was indeed a longer-term relationship between A.H. and Porter than there was in the incident involving T.D. Porter. But it wasn't only the relationship. I mean, the — the theory here was that he went in and was — was the name of the victim T.D.? Was that what he was? Correct, Your Honor. He went into — that he just showed up in T.D.'s chambers and was on top of him, that he — it's not — it's not simply that there was — they were both there and he did something that T.D. said he didn't like. It's that he went into the cabin unannounced and just got on top of him, right? Isn't that — wasn't that the story? Yes, Your Honor. And the district court recognized the dissimilarity in terms of the single event versus a relationship. But it's not a single — it's not a question of a single event. It's a question of essentially a — you know, a — this didn't happen within a relationship, sexual or otherwise. It happened — I understand they knew each other vaguely, but as T.D. told the story, it isn't that they were in the cabin together and then this happened. It's that this guy just walked into the cabin and raped him without — without him even being awake when it started. That's correct, Your Honor. But what the district court focused on as well was the parallel accusations of the nature of the assaults. The — the biting, the choking, the physical restraint, and the anal penetration or attempted anal penetration were strikingly similar aspects of both assaults that also informed the Court's analysis. And that similarity analysis also exists in the context of all the other the Court really did a diligent and thoughtful job of trying to balance in deciding whether or not to let this evidence in. And just taking a step back and thinking about the fairness of admitting this type of evidence, the Court — several aspects of this case speak to the guardrails that the district court put on the admission of this evidence. There's, of course, disclosure of materials to Mr. Porter pretrial to avoid unfair surprise. There's pretrial notice in the form of a Rule 413 notice filed by the government, which was akin to a motion in Limney. The district court held a hearing on Rule 413 at which it entertained all the arguments of the parties about whether to admit this evidence. It issued a written order in order to allow for meaningful appellate review, which is what Limney asks district courts to do. It granted the motion without prejudice to the motion being re-raised at a later time in the trial, which Mr. Porter did not re-raise. It allowed — there was the opportunity to cross-examine A.H. at trial. There were jury instructions, including this Court's Model 2.11, which does not allow a jury to convict a defendant on the basis of that other assault. I mean, you know, everything you say is true. I think, though, the implication of all this is that virtually any prior forcible sexual activity by the defendant would likely come in under this logic. I don't agree, Your Honor, with that respectfully. And one example of that is the Glanzer case, a Rule 415 case, where this Court affirmed a district court's exclusion of a prior sexual assault. So I think Glanzer, more broadly, supports the idea that as a set of guardrails or protectors of truly devastating and potential evidence from coming in. Well, I guess one thing, and this may be essentially what the defendant is arguing through some of his arguments about the nature of the sexual activity, is that the — some of the things that are allegedly distinctive here may not be so distinctive in terms of sexual practices. It would be one thing if they were perhaps even more unusual, but I think what the defendant's argument is, is that these are essentially things that people engage in. And here it was forcible, and that's — and that's the argument that there's a similarity. But beyond that, some of the things we're talking about may be more common. Respectfully, Your Honor, I would push back on Mr. Porter's premise, which is that it is a — that it is a normal part of the LGBTQ-plus community to engage in unconsensual  It doesn't matter whether it's normal. The question is whether it's not unusual. And the point, Your Honor, Judge Berzin, that I would make is that it ignores the narrowness of the 413 evidence here, which was unconsented to choking, strangling, anal penetration and restraint. It's not — the government at no point made the argument that because Mr. Porter has certain sexual interests, that that is why a jury should convict him. Right. But the key parallel here is unconsented to. Unconsented to. And that's where I — that's where my question comes back, is that if we're saying this comes in, then it seems that many, if not all, prior unconsented to sexual activity would then be relevant to the prosecution in this case. It could be potentially relevant, but there's still the 403 balance that has to look at similarity, closeness in time, frequency of the prior incidents, and other factors that a district court can consider in weighing whether to keep this evidence out. And I would push back on one other line of argument just before I run out of time that Mr. Porter raises, which is that he asserts that the government took advantage of this propensity evidence at closing argument to say this is what the defendant does. Respectfully, my friend on the other side takes that comment out of context. That — that phrase was the culmination of a paragraph describing an element of one of the offenses, describing the — the alleged assault on T.D. by Mr. Porter, and then the last sentence is, after discussing attempted anal penetration, this is what the defendant does. That comes nine pages before any mention of A.H. in the closing argument, and I'd respectfully submit that these are completely disparate or divorced concepts within the closing argument insofar as Mr. Porter wants to argue that that is informative here. Did you say that the LeMay case discussed McKinney? Yes, Your Honor. Where is that? At page 1026 to 1027, Your Honor, this Court said, LeMay, of course, emphasizes that McKinney held that the ban on propensity evidence is of constitutional magnitude. What he misses, however, is the fact that we have — we held that such evidence will only sometimes violate the constitutional right to a fair trial if it is of no relevance, if it is — if its potential for prejudice far outweighs what little relevance it might have. And so it specifically consented with the same phrase from McKinney that Mr. Porter argues to this Court in his brief. Okay. And my last point before I wrap up is that — and with regard to the legislative history, my friend suggested that the legislative history, quote-unquote, gutted Rule 403. Both Senator Dole and Representative Molinari both specified that the Rule 403 balance remains a part of the assessment of whether Rule 413 evidence should come in, and that has also been part and parcel of the second, seventh, eighth, tenth circuit cases that have also found 413 to be constitutional and, by analogy, LeMay. And with that, the United States — Did any of the circuit cases as to either 413 or 414 or 415 actually have a data-driven analysis of — it's almost an equal protection argument. Did any of these address the equal protection argument that essentially says the exception for sexual acts from the general rule is an equal protection violation? But with data to show that there's really not a cognizable difference. I do not believe there's a data-driven analysis, although equal protection arguments have been rejected by the courts that have considered it. But I don't The rules, when they were enacted in 1994, had a somewhat long history as early as 1991 where the rules had been debated for a series of years and ultimately culminated in the passage of these three rules. But I'm not aware of a data-driven equal protection analysis, Your Honor. Unless the Court has any further questions, I would ask that the Court affirm the district court. Thank you, Mr. Desai. Thank you, Your Honor. Just three quick points, Your Honor. The first is with regard to the legislative history. It came from the Seventh Circuit's case in Julian. And one of the things that the Court — No, it comes from the legislative history. Right, right. But it was cited in Julian. Sorry. My bad. And during that discussion, one of the things that was mentioned was that Congress had said there should be a And I think that's where 403 is gutted. I know Congress, when they enact a presumption like, say, for instance, in the Bail Reform Act, they also note that that's a rebuttable presumption. It can be rebutted. Congress omitted to do that here. And so I do think 403 is gutted because of that. And the government, in its 50-something pages of briefing, offers no hypothetical how that would actually function, how that would be rebutted. And my final point is just in terms of the evidence in this particular case, it wasn't something so unusual, as Your Honor's question indicated. It was just — this is just normal sexual conduct. And that was done in a two-year consensual relationship, which doesn't have bearing, doesn't meet the LeMay factors. And with that, I would — Although she said it was unconsented, and that is the difference. No corroboration. Are you, in fact, challenging the application of 403 to this case? I am. I — Where in your brief did you challenge that? I think what I said is it can't work given the fact that there is a — is a presumption that it would be included. And so how would you ever be able to say it's unfairly prejudicial if the Court's already found that it's presumptively admissible? By showing that it was — that the probative value was not — that the prejudice outweighed the probative value. I don't know how it could be when it's presumptively going to always be outweighed. But the district judge here did go through a long-written analysis of that. I did read the analysis, Your Honor. I just disagreed with the way it landed. I felt like it was overly provincial, it came from a previous timeframe, and didn't really contemplate the way people's sexuality is viewed today. But my — so my question is, just as a question of what's before us, did you challenge the way in which this district court, or you're challenging it now, applied the 403B analysis? Yes. As in LeMay, for example, where there was an actual challenge to that. Yes. And I don't think I could pinpoint exactly where that is in my brief, but I think — Because I think it isn't there is the problem. I think that's the whole second section of the brief regarding Judge Kavanaugh. And I did that sort of tongue-in-cheek. But it was to point out that almost any allegation could come out. And so this — that congressional hearing would have — wouldn't have — it would have — these allegations would have been admitted against Justice Kavanaugh. And with that, I would submit, unless the Court has further questions. Okay. Thank you. Thanks, Your Honors. All right. That concludes the argument in our second case, which is now submitted.
judges: BERZON, BRESS, VANDYKE